RV°

**THIS DOCUMENT FILED UNDER SEAL**

ALAN Y. OKAMOTO, HI State Bar No. 9872
841 Bishop Street, Suite 2201
Honolulu, HI 96813
Telephone: 808-521-3336
Facsimile: 808-566-0347
Email: pgahawaii@gmail.com

LODGED

OCT 13 2017

CLERK U.S. DISTRICT COURT
DISTRICT OF HAWAII

CHRISTOPHER J. CANNON, CA State Bar No. 88034
Sugarman & Cannon
737 Tehama Street, No. 3
San Francisco, CA 94103
Telephone: 415-362-6252
Facsimile: 415-362-6431
Email: chris@sugarmanandcannon.com

Attorneys for Movant
HAWAII PARTNERS, LLC

## UNITED STATES DISTRICT COURT

### DISTRICT OF HAWAII MC 17   00288 LEKRLP

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: BOSTON WHALER 370 OUTRAGE "PAINKILLER," HA 9849 H, HULL IDENTIFICATION NUMBER (HIN) BWCE 1942D414 MOORED IN KEWALO BASIN HARBOR, HONOLULU, HAWAII | Misc. No. (Mag. No. 17-00909 RLP) MOTION TO RETURN PROPERTY; MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF LYNN E. PANGAKOS; DECLARATION OF J. CHRISTOPHER McKEE; EXHIBITS 1-5; CERTIFICATE OF SERVICE |

## MOTION TO RETURN PROPERTY

Movant, HAWAII PARTNERS, LLC, by and through undersigned

counsel respectfully moves for the return of property identified in the search

warrant dated August 9, 2017, attached hereto as Exhibit 1.  This motion is made

pursuant to Fed.R.Crim.P. 41(g) and the Fourth Amendment and is supported by

the attached Memorandum, Declarations, Exhibits, the entire Court file and any

material brought to the attention of the Court prior to a decision in this matter.

Dated: October 12, 2017 at Honolulu, Hawaii.

Respectfully submitted,

_____

ALAN Y. OKAMOTO

_____

for CHRISTOPHER J. CANNON

Attorneys for Movant
HAWAII PARTNERS, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: BOSTON WHALER 370 OUTRAGE "PAINKILLER," HA 9849 H, HULL IDENTIFICATION NUMBER (HIN) BWCE 1942D414 MOORED IN KEWALO BASIN HARBOR, HONOLULU, HAWAII | Mag. No. 17-00909 RLP<br><br>MEMORANDUM IN SUPPORT OF MOTION |

**MEMORANDUM IN SUPPORT OF MOTION**

Table of Authorities Continued

*United States v. Premises Known as 608 Taylor Ave., Apartment 302,*
    584 F.2d 1297 (3d Cir. 1978) ……………………………………………….7

*United States v. Ramsden,*
    2 F.3d 322 (9th Cir. 1993)…………………………………………………..16

*United States v. Rosa,*
    626 F.3d 56 (2d Cir. 2010) …..…………………………………………..10

*United States v. Spilotro,*
    800 F.2d 959 (9th Cir. 1986) …………………………………………….11

*United States v. Washington,*
    782 F.2d 807 (9th Cir. 1986) …………………………………………….12

*United States v. Williams,*
    592 F.3d 511 (4th Cir. 2010)…………..………………………………...9

**Amendments**

Fourth Amendment ………………………………………………...5, 9, 10, 14

**Federal Rules of Criminal Procedure**

Rule 41(g)...................................................................................4, 5, 6, 7, 14, 16, 17

**Statutes**

18 U.S.C. § 1958 ………………………………………………………1, 11

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: BOSTON WHALER 370 OUTRAGE "PAINKILLER," HA 9849 H, HULL IDENTIFICATION NUMBER (HIN) BWCE 1942D414 MOORED IN KEWALO BASIN HARBOR, HONOLULU, HAWAII | Mag. No. 17-00909 RLP

MEMORANDUM IN SUPPORT OF MOTION |

## MEMORANDUM IN SUPPORT OF MOTION

### I.    Statement of Relevant Facts

On August 9, 2017, the Court issued a Search and Seizure Warrant, attached

hereto as Exhibit (EX) 1, to search property identified as: "a Boston Whaler 370

Outrage called 'PAINKILLER,' bearing identification number HA 9849 H, hull

identification number (HIN) BWCE1942D414" (hereinafter "Painkiller," "vessel,"

"boat" or "PREMISES") (EX 1, at Attachment (Att.) A).

Hawaii Partners, LLC is the registered owner of the vessel (see registration

and mooring permit attached hereto at EX 2).

The Search and Seizure Warrant identified the following Property to be

seized (EX 1, at Att. B):

> 2.  All records and evidence relating to violations of 18 U.S.C. § 1958 (Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire), involving Miske and others known and unknown, occurring on or about June 14, 2016 to August 30, 2016, including:
>
> a.  Firearms;

b. Trace and forensic evidence to include: biological matter, including but not limited to hair skin, bones, blood, DNA, and fingerprints;

c. Cellular telephones;

d. Keys used to energize the electronics on the PREMISES as needed to map the radio frequency transmissions and "electronic signature" for the PREMISES;

e. The onboard GPS navigational unit used to navigate the PREMISES;

f. Radio frequency transmissions generated by the GPS, radar and radio of the PREMISES;

g. Records and information relating to the ownership and operation of the PREMISES;

h. Records and information relating to the usage of the PREMISES, including GPS data, boat tracking data, radar data, and boat fueling receipts;

i. Records and information relating to the access of computers and other electronic devices within the PREMISES;

j. Records and information that tend to establish the identity of the individuals who may have been present on the PREMISES;

k. Investigators seek broad authority to take photographs on the PREMISES during the course of the search to document the existence of potential evidence items that are not foreseen at this time."

The warrant also identified the vessel as property to be seized, but only "as necessary to permit a forensic search and inspection for evidence described" above (EX 1, at Att. B). As explained in the attached Declaration of Lynn E. Panagakos (Panagakos Dec.), counsel for Mr. Miske, on August 10, 2017, FBI Supervisory Special Agent Daniel Olson informed Ms. Panagakos of the warrant and inquired

whether Miske would provide the government access to the keys to the vessel, so that the agents could execute the search in a manner which minimized damage to the vessel. Mr. Miske complied. Agent Olson informed Ms. Panagakos that he estimated that the search of the vessel would be completed within one week.

On August 28, 2017, after two follow-up inquiries by Panagakos, government counsel informed Panagakos that he revised the government's estimated completion date to 3-6 months (see e-mails attached hereto as EX 3 and 4). Government counsel explained that the government will be holding the vessel pending not only the forensic search that was executed pursuant to the warrant, but also pending the results of the government's scientific testing and analysis of samples seized pursuant to that search. Government counsel explained (EX 4):

> Depending on the results, other areas may need to be further searched and/or large areas removed to collect additional evidence and run additional tests. The results are expected to take anywhere from 3 – 6 months. The FBI has received Court approval to hold the boat until at least November 25, 2017. This deadline may be extended with Court approval.

Government counsel further acknowledged that cutting and removing large areas "would destroy the structural integrity of the boat and ultimately render the boat impracticable for future use" (*Id.*).

The government has provided Panagakos a Receipt for Property "collected/seized" on September 1, 2017 (attached hereto as EX 5), which attached

3

a "partial inventory list." This list demonstrates that an extensive search has already been conducted including swabbing and vacuuming for items of evidentiary value, and that many items have been seized to examine for trace and forensic evidence. There is no reasonable necessity, nor probable cause, to do testing that would undermine the structural integrity of the boat. Accordingly, Movant Hawaii Partners, LLC, through counsel, hereby requests that the Painkiller be returned immediately. If the Court denies our request for the return of the Painkiller, Movant requests the Court not authorize any destructive searches of the boat without notice to counsel and an opportunity to be heard on the issue.

## II.   Argument

Fed.R.Crim.P. 41(g) authorizes a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property" to "move for the property's return." Rule 41(g) is broader than the exclusionary rule. First, it includes not only property that was unlawfully seized, but also property that was lawfully seized. *U.S. v. Comprehensive Drug Testing, Inc.,* 621 F.3d 1162, 1173 (9th Cir. 2010) (*en banc)*. Moreover, "judicially-imposed restrictions on the scope of the exclusionary rule—itself a judicially-created remedy—are not applicable to orders for return of property which derive their authority from the Federal Rules of Criminal Procedure and their enabling legislation." *Id.* In addition, whereas the exclusionary rule applies only to criminal defendants, Rule 41(g) protects a much

4

broader class of aggrieved persons, i.e.- all persons "whose property and privacy rights are impaired by the seizure." *Id.*

### A. Hawaii Partners, LLC is an "Aggrieved Person" under Fed.R.Crim.P. 41(g)

As the Registered Owner of the boat, Painkiller, Hawaii Partners, LLC is the aggrieved Person in this motion.

### B. A Three to Six Month Delay in Completing the Search is Unreasonable

The Fourth Amendment requires officials to execute searches and seizures in a reasonable manner. *United States v. Ankeny,* 502 F.3d 829, 836 (9th Cir. 2007) (manner in which warrant is executed is subject to judicial review as to its reasonableness). This precludes unreasonable delay. *See e.g., United States v. Ivers,* 430 Fed. Appx. 573, 575 (9th Cir. 2007); *U.S. v. Metter,* 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012) ("the Fourth Amendment requires the government to complete its review, i.e., execute the warrant, within a reasonable period of time.").

A Rule 41(g) motion is properly brought to recover property seized lawfully when the government holds the property for an unreasonable length of time. *See e.g., Ivers, supra,* 430 Fed. Appx. at 575-76. The test of whether property should be returned is whether the government's retention of that property is reasonable. *See e.g., In re Documents and Other Possessions at the Metro. Corr. Ctr. Of Prisoner Matthew F. Hale,* 228 F.R.D. 621, 623 (N.D. Ill. 2005).

As explained in the attached Declaration of Forensic Evidence expert, J.

5

Christopher McKee, one week constitutes a reasonable amount of time to process a murder crime scene for forensic and trace evidence. The government has already held the boat for two months. There is no technological reason for any significant delay in getting test results. The results of any tests could be available on the same day that the tests are conducted. Furthermore, since the government has already extensively swabbed and vacuumed the boat, it can retain those swabs and vacuum filters for any and all future testing needs. If the surface swabs do not contain useful information, it is highly unlikely that hard structural surfaces would contain useful trace evidence. Therefore, the government's continued retention of the vessel, for up to six months, or additional destructive testing is not reasonable and should not be permitted.

In *Ivers, supra* 430 Fed. Appx. at 575, the Ninth Circuit affirmed the denial of a child pornography defendant's motion to suppress evidence seized from his computers on the ground of unreasonable delay, reasoning that the FBI "acted diligently and offered a reasonable explanation for any delay." Here, the government has not demonstrated that it has acted diligently, or offered any explanation for a three to six-month delay in getting test results. Moreover, the *Ivers* Court distinguished between the suppression remedy sought there and the more broadly available Rule 41(g) remedy sought here. The *Ivers* opinion concludes as follows: "[Ivers] could have filed a motion to return property at any

6

time. Fed.R.Crim.P. 41(g).  He simply did not do so." *Id.,* at 576.

Here, Hawaii Partners, LLC is doing precisely what the *Ivers* Court

suggested.  Assuming *arguendo* that the government lawfully seized the vessel,

Hawaii Partners respectfully requests the return of the vessel.  Hawaii Partners

should not be deprived from the use of its property.

## C. The Government's Retention of the Vessel in Order to Conduct Further Searches is Not Reasonable

In determining whether the government's continued retention of property is

reasonable, the Court should consider the purpose for which the property is being

held.  *United States v. Premises Known as 608 Taylor Ave., Apartment 302,* 584

F.2d 1297, 1304 (3d Cir. 1978).  Here, the warrant authorized the seizure of the

vessel solely "as necessary to permit the forensic search and inspection for

evidence" listed in the warrant.  Thus, the terms of the warrant limit the purpose

and duration of the seizure.

The government executed an extensive forensic search and inspection of the

vessel over a period of two months.[1]  The electronics covered by the warrant have

---

1 The warrant was issued on August 9, 2017 (EX 1). On August 10, 2017, FBI Supervisory Special Agent Daniel Olson informed attorney Panagakos that the vessel had been seized and that agents were onboard to execute the search (Panagakos Dec., ¶2). By email dated August 17, 2017, government counsel informed Panagakos that the search was ongoing (EX 3). On August 28, 2017, government counsel informed Panagakos that the FBI had swabbed areas of the vessel and taken samples (EX 4). On September 1, 2017, government counsel provided Panagakos a three-page listing of items collected/seized on September 1, 2017 (EX 5).

been seized. Extensive areas of the vessel have been swabbed. Hair has been

seized. A large number of other items have been seized, apparently for off-site

forensic analysis, e.g. filters, sponges, knives, clothes, brushes, mats, drains,

sumps, pumps, and more; and the boat has apparently been vacuumed in a search

for trace evidence to analyse. (EX 5).

The government's stated purpose for continuing to hold the vessel is as

follows: "Depending on the results, other areas may need to be further searched

and/or large areas removed to collect additional evidence and run additional tests"

(EX 4).  The government has not explained what results would generate the need

for further searches and possible removal of large areas of the vessel.  It is well

settled that probable cause can dissipate over time.  The search that has been

executed is for evidence of a crime which, if it occurred at all, was complete more

than one year ago.  Thus, even prior to the search and seizure that has now been

executed, a staleness issue already existed. *See e.g., U.S. v. Charest,* 602 F.2d

1015 (1st Cir. 1979) (holding that an affidavit submitted eighteen days after a

homicide, which stated that a reliable informant had told police that defendant shot

victim, was too stale to provide for issuance of warrant directing seizure of weapon

from defendant's residence).  To the extent that the search that has now been

executed failed to yield inculpatory evidence, or yielded evidence which

impeaches or fails to corroborate the information presented in the government's

affidavit in support of its application for the search warrant, this lack of evidence

would wholly dissipate any arguable probable cause showing that the government

may have made in its original affidavit.  Therefore, the government should not be

permitted to continue to hold the vessel in order to conduct further unspecified or

speculative searches.  Moreover, if the extensive search the government has

already conducted does not lead to evidence, it is highly unlikely that additional

destructive testing will lead to evidence.  Boat surfaces are generally hard and non-

absorbent.  If no evidence is found through the extensive examination of swabs and

vacuum filters, it is highly unlikely that a destructive fishing expedition will

somehow turn up evidence missed by the prior extensive search.

## D. The Warrant Pursuant to which the Vessel was Seized is Defective and Therefore Cannot Support the Government's Continued Retention of the Vessel

A warrant that fails to conform to the particularity requirement of the Fourth

Amendment is unconstitutional. *Massachusetts v. Sheppard*, 468 U.S. 981, 988, n.

5 (1984); *accord, Groh v. Ramirez,* 540 U.S. 551, 557 (2004).  The particularity

requirement requires, *inter alia,* that the warrant "specify the items to be seized by

their relation to designated crimes." *United States v. Galpin,* 720 F.3d 436, 446 (2d

Cir. 2013) (internal quotation marks omitted) (*citing, United States v. Williams*,

592 F.3d 511, 519 (4th Cir. 2010);  *United States v. Buck,* 813 F.2d 588, 590-92

(2d Cir. 1987) (warrant authorizing seizure of "any papers, things or property of

9

any kind relating to [the] previously described crime" was insufficiently particularized insofar as it "only described the crimes — and gave no limitation whatsoever on the kind of evidence sought"); *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) (warrant "defective in failing to link the items to be searched and seized to the suspected criminal activity" because it "thereby lacked meaningful parameters on an otherwise limitless search").

In addition, "a warrant is overbroad if its 'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'" *United States v. Lustyik*, 57 F. Supp. 3d 213, 228 (S.D.N.Y. 2014) (quoting *Galpin*, 720 F.3d at 446 (facially overbroad warrant violates Fourth Amendment).

Further, to the extent that a warrant lacks an adequate temporal limitation, this constitutes a factor militating against particularity and in favor of a finding of overbreadth. See, e.g., *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) ("Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad.") (quoting *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999)); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995).

The warrant herein does not conform to the Fourth Amendment's particularity requirement, and it is also defective because it is overbroad. Although

10

the warrant includes an illustrative list of items to be seized, this list places no limit

on the general description of "all records and evidence relating to violations of 18

U.S.C. § 1958" (EX 1, at Att. B, ¶2).

     In *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) the Ninth Circuit

reemphasized the longstanding proposition that: "'[G]eneric classifications in a

warrant are acceptable only when a more precise description in not possible.'"

(Citation omitted.)  As in this case, "[t]he government could have made the warrant

more particular." *Id.*  Because it did not, the *Kow* Court suppressed the records

which were seized.

     In determining whether a description of items to be seized is sufficiently

precise, the court should consider whether probable cause exists to seize all items

of a particular type described in the warrant.  *United States v. Spilotro*, 800 F.2d

959, 963 (9th Cir. 1986).  Generic categories of items, without limitation, do not

satisfy the particularity requirement.  See: *United States v. Cardwell*, 680 F.2d 75

(9th Cir. 1982); *United State v. McClintock*, 748 F.2d 1278 (9th Cir. 1984), cert.

den. 88 L.Ed.2d 61 (1985).

     The Ninth Circuit has been particularly concerned with the use of overbroad

warrants allowing general searches, e.g. *United States v. Clark*, 31 F.3d 831 (9th

Cir. 1994); *Center Art Galleries Hawaii, Inc. v. United States*, 875 F.2d 747 (9th

Cir. 1989); *United States v. Holzman*, 871 F.2d 1496 (9th Cir. 1989); *United States*

*v. Spilotro*, 800 F.2d 959 (9th Cir. 1986); *United States v. Washington*, 782 F.2d 807, 819 (9th Cir. 1986); *United States v. Crozier*, 777 F.2d 1376, 1381, 1382 (9th Cir. 1985); and has repeatedly emphasized "'limiting' the search only to records that are evidence of the violation of a certain statute is generally not enough." *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982).

In addition to the overbroad categorization of items to be seized and searched, the illustrative list itself includes categories which do not satisfy the particularity requirement, and which also fail for overbreadth. While the crime is alleged to have occurred on or about June 14, 2016 through August 30, 2016, there is no corresponding time limit on the illustrative list of items to be seized. For example, there is no basis to believe that any firearms or cell phones on the vessel in August 2017 would have any nexus to an offense which, if it occurred at all, is alleged to have occurred more than one year ago. See e. g. *In re Google Email Accounts Identified in Attachment A*, 92 F. Supp. 3d 944 (D. Alaska 2015) (denying application as overbroad because its request to seize and search the six Gmail accounts in their entirety was not tailored to its narrow probable cause showing for the limited time periods approved in the first warrant.)

Likewise, there is no basis to believe that trace and forensic evidence of this offense would exist on clothes, cans, knives, hair brushes, sponges, and other items on the vessel in August 2017, particularly without a showing that those items were

on the vessel in June, July and August 2016. The warrant's failure to connect the items seized with the time of the alleged offense renders the warrant overbroad and insufficiently particular.

Similarly, assuming *arguendo* that the affidavit set forth reliable, accurate and complete information, and that this information established probable cause that the vessel was used in a murder for hire offense sometime between June 14, 2016 and August 30, 2016, this does not provide a basis for the wholesale seizure of the GPS navigational unit and its data, as well as all radio frequency transmissions, boat tracking data, radar data, and records and information related to the access of computers and electronic devices, including all such data for the year following the alleged offense, *see Galpin, supra,* 720 F.3d at 446 (particularity requirement assumes even greater importance when property to be searched is computer hard drive); *Comprehensive Drug Testing, Inc., supra,* 621 F.3d at 1177 ("The process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect"). Likewise, the affidavit does not establish probable cause for: (1) boat fueling receipts and other records and information related to the usage of the vessel during the post-offense period; or (2) records and information which tend to establish the identity of individuals who may have been on the vessel during the post-offense period. In addition, "broad authority to take photographs

13

on the PREMISES during the course of the search to document the existence of potential evidence items that are not foreseen[2]" is wholly lacking in any standards. Indeed, by its own terms, probable cause did not exist for such photographs at the time the warrant was issued.

By the terms of the warrant, the government's seizure of the vessel was for a limited purpose: "as necessary to permit a forensic search and inspection for evidence" described in the warrant. As discussed above, the description of this "evidence" is overbroad and does not comport with the Fourth Amendment's particularity requirement. Since the warrant is not valid, any further searches pursuant to it will not be lawful. Since the government's sole justification for its continued seizure of the vessel is to conduct further searches pursuant to an invalid warrant, it does not have a lawful need to continue to hold the vessel. Therefore, the government's continued retention of the vessel is not reasonable, and Hawaii Partners respectfully requests that it be returned. *See Advisory Committee Notes to 1989 Amendments to Fed.R.Crim.P. 41* ("Courts have long recognized that once the government no longer has a need to use evidence, it should be returned." (citation omitted)).

---

[2] We are curious how the government could convince a magistrate there was probable cause to search specific items of which it was unaware.

### E. Cutting and Removing Structural Areas of The Vessel Would Constitute Unreasonably Excessive Property Damage.

"Unnecessary destruction of property . . . can render a search unreasonable." *Ankeny, supra,* 502 F.3d at 836-37 (*citing, inter alia, San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose,* 402 F.3d 962, 974 (9th Cir. 2005) (holding that it was unreasonable for officers to cut a mailbox off its post, jackhammer the sidewalk, and break a refrigerator); *Boyd v. Benton County,* 374 F.3d 773, 780 (9th Cir. 2004) (*citing Chuman v. Wright,* 76 F.3d 292, 293 (9th Cir. 1996) (excessive force claim recognized where officers stormed residence and caused unnecessary property damage during search, i.e. - broken windows, torn paneling from walls, holes in floor and ceiling, and destroyed personal items)) .

Here, the government has stated that, depending on the results of the tests on the samples that the government has seized thus far, the government might cut and remove large areas of the vessel, which would destroy its structural integrity and render it impracticable for future use (EX 4). Hawaii Partners, LLC respectfully submits that wholesale destruction of this valuable property would be unreasonably excessive.

At minimum, the government should be required to demonstrate probable cause that property destruction of this magnitude is likely to yield incriminating evidence. Before engaging in any act that would compromise the structural

15

integrity of the vessel, the government should be required to demonstrate probable cause that trace or forensic evidence existed, and continues to exist, within that area, and that all appropriate and available measures to reduce this injury have been taken. *C.f., e.g., Ankeny,* 502 F.3d at 836-37.

Hawaii Partners, LLC respectfully requests that before any property damage occurs, they be afforded notice and a meaningful opportunity to be heard and to challenge probable cause and the lack of any less destructive alternatives. This request is squarely within the spirit of Rule 41(g). As the Court stated in *U.S. v. Ramsden,* 2 F.3d 322, 327 (9th Cir. 1993): "The spirit of Rule 41([g]) is one of compromise. . . . The amended rule recognizes that reasonable accommodations might protect both the law enforcement interests of the United States and the property rights of property owners and holders."

*Ramsden,* requires the district court to balance four discretionary factors to determine whether to allow the government to retain the property, order it returned or, as ordered in *Ramsden,* craft a compromise solution that seeks to accommodate the interests of all parties.

The Court should examine: "1.) whether the Government displayed a callous disregard for the constitutional rights of the movant; 2.) whether the movant has an individual interest in and need for the property he wants returned; 3.) whether the movant would be irreparably injured by denying return of the property; and 4.)

whether the movant has an adequate remedy at law for the redress of his grievance." *Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993).

We strongly contend that destroying the structural integrity of a boat on a fishing expedition for evidence of an alleged crime that occurred more than a year ago, particularly when there are alternative nondestructive ways to gather any evidence which may exist demonstrates a callous disregard of movant's rights.[3] There is no dispute Hawaii Partners owns the property and cannot use it while it is in the government's possession; and there is not another adequate remedy at law to preserve the structural integrity of the boat.   We request that our boat, Painkiller be returned.

### F. Request for Evidentiary Hearing

Rule 41(g) provides: "The court must receive evidence on any factual issue necessary to decide the motion."  Hawaii Partners, LLC respectfully submits that the information set forth above and in the attached Declarations and Exhibits establish that the boat should be returned.  If the Court and the government disagree, or dispute any factual issues necessary to decide this motion, Hawaii Partners, LLC respectfully request an evidentiary hearing before a boat worth more

---

[3] In *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010) the Ninth Circuit held that Rule 41 does not require a motion for return of property to be made by a defendant. ("But CDT and the Players Association are not seeking to have evidence suppressed, as they are not criminal defendants.)

than $400,000 is destroyed unnecessarily.

DATED:  October 12, 2017, at Honolulu, Hawaii.

Respectfully submitted,


_____
ALAN Y. OKAMOTO


_____
CHRISTOPHER J. CANNON

Attorneys for Movant
HAWAII PARTNERS, LLC

18

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF BOSTON WHALER 370 OUTRAGE "PAINKILLER," HA 9849 H, HULL IDENTIFICATION NUMBER (HIN) BWCE 1942D414 MOORED IN KEWALO BASIN HARBOR, HONOLULU, HAWAII | Mag. No. 17-00909 RLP<br><br>DECLARATION OF LYNN E. PANAGAKOS |

## DECLARATION OF LYNN E. PANAGAKOS

I, Lynn E. Panagakos, declare under penalty of perjury that the information set forth below is true and correct to the best of my knowledge and belief:

1.  I am an attorney licensed to practice law in the State of Hawaii.

2.  I represent Michael Miske.

3.      On August 10, 2017, I spoke by telephone with FBI Supervisory Special Agent Daniel Olson. Agent Olson informed me that the government had obtained a search warrant and seized the vessel at issue in this motion, and that agents were onboard to execute the search. Agent Olson inquired whether Mr. Miske would be willing to provide government agents the keys to the vessel, so that the agents could gain access to the vessel without damaging it. On behalf of Mr. Miske, I informed Agent Olson where the keys were located.

4.      On August 10, 2017, Agent Olson provided me a copy of the Search and Seizure Warrant, and informed me that he estimated that the search would be completed in approximately one week.

5.      Attached hereto as Exhibit 1 is a true and correct copy of the Search and Seizure Warrant that I received from Agent Olson.

6.      Attached hereto as Exhibits 3 and 4 are true and correct copies of emails between AUSA Darren Ching and me.

7.      Attached hereto as Exhibit 5 is a true and correct copy of the receipt for property and partial inventory list that I received from the government on September 1, 2017.

DATED:  October 10, 2017, at Honolulu, Hawaii.

LYNN E. PANAGAKOS

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF BOSTON WHALER 370 OUTRAGE "PAINKILLER," HA 9849 H, HULL IDENTIFICATION NUMBER (HIN) BWCE 1942D414 MOORED IN KEWALO BASIN HARBOR, HONOLULU, HAWAII | Mag. No. 17-00909 RLP<br><br>DECLARATION OF J. CHRISTOPHER MCKEE |

## DECLARATION OF J. CHRISTOPHER MCKEE

I, J. Christopher McKee, declare under penalty of perjury that the information set forth below is true and correct to the best of my knowledge and belief:

1.    I am on the faculty of the University of Colorado School of Law, where I have been teaching since 2009.  My primary scholarly focus and teaching is on forensic science evidence issues.

2.    Since 2004, I have been a nationally recognized expert and lecturer on forensic science evidence.  I have presented on forensic science evidence to the American Bar Association, Administrative Office of the United States Courts, National Association of Criminal Defense Lawyers, National Legal Aid and Defender Association, National Juvenile Defender Association and numerous Federal, State and local defender offices and Bar Associations.

3.      Since 2009, I have been a forensic evidence consultant advising attorneys on issues ranging from DNA, Serology, Pattern Analysis and Arson Investigations.  My expertise in these areas has been developed over two decades of focus on investigations involving the collection and analysis of forensic science evidence.

4.      I have been offered and accepted in courts in Maryland and Colorado as an expert in forensic science evidence.

5.      I have reviewed the Motion in Support of the Motion to Return Property and an inventory return in the above captioned case.  In my opinion, there is no reason why it would take three to six months to process and/or test forensic evidence in this case.

6.      A review of the inventory return indicates that an extensive search has already been conducted.  Interior and exterior surfaces have been searched, swabbed and in some circumstances vaccumed for any possible trace evidence.  Porous objects have been seized.

7.      If the extensive search that has already been conducted does not yield any evidence, it is highly unlikely that additional testing that would jeopardize the structural integrity of the boat would be justified.  Any claim at the present time for the necessity of a delay in the return of the property is tantamount to a request to allow a

future unspecified fishing expedition for possible unspecified forensic evidence.

8.   Law enforcement authorities in Federal, State and localities are specially trained to identify and collect all possible forensic evidence during the course of their investigations.  In the collection of suspected biological materials, the use of alternative light sources, non-destructive chemical agents and visual inspection are employed to identify any areas of interest to an investigation.  Any suspected areas are documented by photographs, in reports/diagrams and swabbed or collected for biological materials.

9.   The sensitivity and speed of forensic testing results has improved significantly over the past two decades.  Serological and DNA testing from the inspection, extraction, quantitation, amplification and interpretation phases could produce results from an investigation within 24 to 36 hours.  The widely used scientific DNA testing kits and technology employed in the testing process present no temporal limitations that would cause undue delay.

J. CHRISTOPHER MCKEE
Date:  September 22, 2017

# EXHIBIT "1"

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

## for the

District of Hawaii

| | | | |
|---|---|---|---|
| In the Matter of the Search of | ) | | |
| *(Briefly describe the property to be searched* | ) | | |
| *or identify the person by name and address)* | ) | Case No. | Mag. No. 17-00909 RLP |
| Boston Whaler 370 Outrage "PAINKILLER," HA 9849 H, | ) | | |
| Hull Identification Number  (HIN) BWCE1942D414 | ) | | |
| Moored in Kewalo Basin Harbor, Honolulu, Hawaii | ) | | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Hawaii _____
*(identify the person or describe the property to be searched and give its location):*

See Attachment "A."

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment "B."

**YOU ARE COMMANDED** to execute this warrant on or before _____August 23, 2017_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Kevin S.C. Chang_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____

Date and time issued:  August 9, 2017  3:3x p

City and state:     Honolulu, Hawaii

_____
*Judge's Signature*

KEVIN S.C. CHANG, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>Mag. No. 17-00909 RLP | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a Boston Whaler 370 Outrage called "PAINKILLER,"

bearing identification number HA 9849 H, hull identification number (HIN) BWCE1942D414,

located in Kewalo Basin Harbor, Honolulu, Hawaii, referenced above as the "PREMISES."

# ATTACHMENT B

*Property to be seized*

1.      Boston Whaler 370 Outrage called "PAINKILLER," bearing identification number HA 9849 H, hull identification number (HIN) BWCE1942D414, as necessary to permit a forensic search and inspection for evidence described below:

2.      All records and evidence relating to violations of 18 U.S.C. § 1958 (Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire), involving Miske and others known and unknown, occurring on or about June 14, 2016 to August 30, 2016, including:

      a.   Firearms;

      b.   Trace and forensic evidence to include: biological matter, including but not limited to hair skin, bones, blood, DNA, and fingerprints;

      c.   Cellular telephones;

      d.   Keys used to energize the electronics on the PREMISES as needed to map the radio frequency transmissions and "electronic signature" for the PREMISES;

      e.   The onboard GPS navigational unit used to navigate the PREMISES;

      f.   Radio frequency transmissions generated by the GPS, radar and radio of the PREMISES;

      g.   Records and information relating to the ownership and operation of the PREMISES;

      h.   Records and information relating to the usage of the PREMISES, including GPS data, boat tracking data, radar data, and boat fueling receipts;

i. Records and information relating to the access of computers and other electronic devices within the PREMISES;

j. Records and information that tend to establish the identity of the individuals who may have been present on the PREMISES;

k. Investigators seek broad authority to take photographs on the PREMISES during the course of the search to document the existence of potential evidence items that are not foreseen at this time.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

# EXHIBIT "2"

STATE OF HAWAI'I
CERTIFICATE OF NUMBER FOR UNDOCUMENTED VESSEL

| HA- 9849 H | | HULL IDENTIFICATION NUMBER BWCE1942D414 | | | | | |
|---|---|---|---|---|---|---|---|
| EXPIRATION DATE | TYPE VESSEL | YR / MO. EST / MO. | LENGTH | HULL MTR | FUEL | PROP | USE | CO-OWNERS |
| 8/2018 | 2 | 2014 | 37' 6" | 3 | 1 | 1 | 1 | 0 |

HAWAII PARTNERS, LLC
940B QUEEN STREET
HONOLULU, HI 96814

**ALWAYS CARRY THIS CERTIFICATE ON VESSEL WHILE IN USE**
SEE REVERSE SIDE FOR IMPORTANT INSTRUCTIONS

# KEWALO BASIN HARBOR, HONOLULU, HAWAII

Date Permit Commences: 09/01/2017
Date Permit Ends: 08/31/2018

Permittee: HAWAII PARTNERS, LLC
Contact: Delia Fabro
Address: 940 B Queen St.
City/State/Zip: Honolulu, HI 96814
Phone: (808) 859-0032 (c)
Alt Phone: (808) 591-9937 (r)
E-mail: delia.fabro@gmail.com

Type of Permit:
☐ Commercial Fishing
☐ Commercial Charter
☑ Regular
☐ Temporary

Intended Use: Recreation

Vessel Name: BOSTON WHALER
Berth No.: A12
LOA: 37'
Reg./Doc. No.: HA-9849 H
GE License No.: n/a
Insurance Exp.: 08/04/2018
Letter of Good Standing: ☐
Customer No.: 11110

## Harbor Rates

Mooring: 670.00
Utilities (Water): 14.00
Performance Fee: 1340.00
Ticket Booth: n/a
Other: n/a
TOTAL: 684.00

## MOORING PERMIT

IT IS HEREBY AGREED BY AND BETWEEN:

ALMAR MANAGEMENT INC., a California corporation, on behalf of KEWALO HARBOR, LLC, a Hawaii limited liability company, hereafter called "Permittor", as Harbor Master pursuant to the Rules as defined below, and  HAWAII PARTNERS, LLC
hereinafter called "Permittee", subject to all the terms and conditions set forth herein, agree as follows:

This Permit is for a mooring berth in Kewalo Basin Harbor at Berth No.  A12     for the vessel
  BOSTON WHALER     (the "Vessel"), Document No.   HA-9849 H  for the purpose
of   Recreation  .

     1.    Permittee agrees to abide by all existing and future Hawaii Administrative Rules, Chapters 15-211 to 15-214, State of Hawaii, which are incorporated herein by reference, in addition to any other rules adopted by Permittor or the Hawaii Community Development Authority, as the same may be amended ("Rules") and to the full performance of the following terms, conditions, and charges.

     2.    Living aboard the Vessel is prohibited.

     3.    Permittor, in consideration for the compliance with Rules, fees, and charges to be paid by Permittee to it, and the terms and conditions hereinafter contained and to be observed and performed by Permittee, does hereby grant to Permittee permission to moor the Vessel, and only the Vessel registered herein with Permittor. Permittor may require Permittee to move the Vessel to another berth. Permittor reserves the right to use the berth when not in use by the Permittee, without any reduction or rebate of the Mooring Fees (as defined below).

     4.    Permittee agrees to pay the Permittor all fees and charges for use of the berth as set forth in the Hawaii Administrative Rules, Chapters 15-211 to 15-214, State of Hawaii, plus metered utilities, if applicable (collectively "Mooring Fees"). The current Mooring Fees as set forth under the Rules are reflected in Exhibit A attached hereto and incorporated herein. Mooring Fees shall be paid monthly in advance by Permittee, without notice, and the metered utilities shall be paid within fifteen (15) days after billed following the monthly reading of such meters. Should the Mooring Fees change, Permittee shall be given written notice once, at least thirty (30) days in advance of the date when such



new Mooring Fees are due and payable. Thereafter, Permittee shall pay for the new Mooring Fees monthly in advance, without further notice. Permittee shall be deemed "delinquent" when the Mooring Fees and/or utility payments, if applicable, remain unpaid five (5) days after the date such payment is due.

5.       Permittee covenants and agrees to at all times maintain in full force and effect commercial general liability insurance for bodily injury and property damage in the amounts and as set forth in the Rules and to cause the State of Hawaii, the Hawaii Community Development Authority, Permittor, Kewalo Harbor Management Company, LLC, Kewalo Harbor, LLC and all affiliated entities, successors and assigns and managing agents (collectively, "Permittor Insureds") to be named as additional insureds and to be provided written notice of cancellation from the insurance carrier at least 30 days prior to the proposed cancellation date, if any. Permittee shall also carry such property insurance as it deems prudent, and any risk of loss, whether insured or not, is solely Permittee's responsibility. Permittee's insurance shall be primary. Permittor and Permittee waive, and shall cause their insurers to waive, all subrogation rights against each other and the Permittor Insureds. Permittee further agrees that satisfactory proof of insurance shall be delivered to Permittor upon the execution of this permit and thereafter annually on the anniversary date of this permit.

6.       IN ADDITION TO WHAT IS PROVIDED BY THE RULES AND ELSEWHERE IN THIS PERMIT, THE PARTIES HERETO AGREE THAT NEITHER THE PERMITTOR NOR ANY AGENT, PROPERTY MANAGER, LAND LEASEHOLDER, LAND OWNER, SERVANT, OR EACH OF THEIR EMPLOYEES, AND ALL AFFILIATED ENTITIES, SUCCESSORS AND ASSIGNS (COLLECTIVELY WITH PERMITTOR, THE "PERMITTOR PARTIES") SHALL BE LIABLE FOR ANY LOSS, DAMAGE OR PERSONAL INJURY TO THE PERSON OR PROPERTY OF THE PERMITTEE OR ITS AGENTS, EMPLOYEES, OR INVITEES, INCLUDING, BUT NOT LIMITED TO, THE VESSEL, ITS INVENTORY AND EQUIPMENT, WHETHER SUCH LOSS, DAMAGE, OR PERSONAL INJURY BE OCCASIONED BY FIRE, THEFT, ACT OF GOD, OR ANY OTHER CAUSE (INCLUDING THE NEGLIGENCE OF THE PERMITTOR PARTIES, BUT EXCLUDING WILLFUL MISCONDUCT OR GROSS NEGLIGENCE OF THE PERMITTOR PARTIES). PERMITTEE HEREBY AGREES TO INDEMNIFY AND SAVE HARMLESS THE PERMITTOR PARTIES FROM OR AGAINST ANY CLAIM ARISING FROM THE MAINTENANCE, USE, AND OPERATION OF PERMITTEE'S VESSEL IN THE HARBOR AREAS OR THE USE BY THE PERMITTEE OF THE HARBOR FACILITIES. PERMITTEE HEREBY AGREES TO ASSUME FULL RESPONSIBILITY FOR PERSONAL INJURY AND PROPERTY DAMAGE ARISING OUT OF THE MAINTENANCE, USE, AND OPERATION OF PERMITTEE'S VESSEL AND PERMITTEE'S USE OF THE HARBOR FACILITIES. ACCORDINGLY, PERMITTEE BEARS 100% RISK OF LOSS TO THE VESSEL AND ALL OTHER PROPERTY OF THE PERMITTEE (OTHER THAN THE PERMITTOR PARTIES' GROSS NEGLIGENCE OR WILLFUL MISCONDUCT). THIS SECTION RELEASES THE PERMITTOR PARTIES OF THEIR OWN NEGLIGENCE. THIS SECTION SHALL SURVIVE THE TERMINATION OF THIS PERMIT.

7.       The Permittor Parties shall not be liable for the care or protection of the vessel, its gear, equipment, or contents, or for any loss or damage of whatever kind or nature to the vessel, its contents, gear, or equipment howsoever occasioned. Permittor makes no warranty of any kind as to the condition of the piers, walks, wharfs, gangways, or mooring gear and equipment, nor shall Permittor be liable for injuries to the person or property of Permittee, its agents, employees or guests from any cause or circumstance, EVEN IF ATTRIBUTABLE TO THE NEGLIGENCE OF THE PERMITTOR PARTIES. The Permittor Parties shall be third party beneficiaries of this section.

8.       In addition to what is provided by the Rules, Permittee shall not store or use hazardous materials (including any substance, pollutant, or contaminant regulated under any applicable

environmental laws) in any manner not sanctioned by law nor bring onto the harbor any such hazardous materials except in the ordinary course of Permittee's business, but only if pre-approved in writing by Permittor, within Permittor's sole and absolute discretion and in such instance, only if handled by Permittee in accordance with all applicable laws. Permittee shall be solely responsible for and shall indemnify, defend, and hold harmless the Permittor Parties from and against any loss, damage, cost, expense, or liability arising out of or attributable to the use, generation, manufacture, treatment, handling, refining, production processing, storage, release, threatened release, discharge, disposal, or presence of hazardous materials within the harbor or elsewhere caused by Permittee or persons acting under or on behalf of Permittee, including the related costs of any required or necessary removal, repair, cleanup, or remediation of the Harbor, and the preparation and implementation of any closure, removal, remedial, or other required plans, and all reasonable costs and expenses incurred by Permittor in connection therewith, including without limitation reasonable attorneys' fees. This section shall survive the expiration or earlier termination of this Permit.

9.      Use of the berth by Permittee pursuant to this permit does not grant Permittee any right to retain the use of the berth or any other space in the Harbor. Permittor may terminate this Permit, with or without cause, upon lapse of 48-hours' notice from Permittor to vacate the berth. Such termination right shall expressly apply in the event that Permittee has violated any provisions of this Permit or the Rules. Upon expiration of this Permit or upon its earlier termination, Permittee shall remove its vessel from the berth and the Harbor.

10.     Failure of Permittee to vacate the berth and the Harbor, upon expiration of this permit or upon earlier termination pursuant to section 9 of this Permit, shall subject Permittee to liability for any damages incurred by the returning permittee or newly-assigned regular permittee resulting from Permittee's failure to vacate, and entitles Permittor to remove Permittee's vessel to an impounding area. Permittee shall indemnify and hold harmless Permittor from any liability for damages arising from the failure of Permittee to vacate the berth and the Harbor, and from the removal of the vessel to an impounding area by Permittor in accordance with the terms and conditions of this permit.

11.     Permittee accepts the slip assigned to Permittee, the Harbor and all property of Permittor "as is" and accepts same as suitable for Permittee's purposes and expressly waives any defects therein and agrees to hold the Permittor Parties harmless from any loss or damage or injury to property or person resulting from any defect or improper construction or maintenance of the Harbor or property.

12.     All notices (a "Notice") under this Permit shall be delivered or sent by: (i) first class, registered or certified mail, postage prepaid, return receipt requested, (ii) nationally recognized overnight carrier, or (iii) facsimile with original Notice sent via overnight delivery addressed to the address of the party in question set forth below or to such other address as either party may designate by Notice. Notices shall be deemed given (x) three business days after being mailed as provided in clause (i) above, (y) one business day after delivery to the overnight carrier as provided in clause (ii) above, or (z) on the day of the transmission of the facsimile so long as it is received in its entirety by 4:00 p.m. (Hawaii time) on such day and the original of such Notice is received the next business day via overnight mail as provided in clause (iii) above.

Permittor:      Almar Management Inc.
                1125-B1 Alamoana Blvd
                Honolulu, HI 96814
                Phone:(808)-594-0849
                Fax: (808)-594-0848

Permittee: HAWAII PARTNERS, LLC
940 B Queen St.
Honolulu, HI 96814
(808) 859-0032 (c)
(808) 591-9997 (r)
delia.fabro@gmail.com

13.    This Permit does not create a landlord-tenant relationship between the parties, and shall only constitute a license subject to the terms of this Permit, including the Rules as incorporated herein. This Permit shall not be assigned or transferred without the prior written consent of Permittor.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

EXECUTED this 15 day of AUG 201 7.

**PERMITTOR:**

**ALMAR MANAGEMENT INC.,**
a California corporation

By: _____
Name: John Evelet
Title: Harbor Manager

**PERMITTEE:**

HAWAII PARTNERS, LLC .
a _____

By: _____
Name: Delia Fabry
Title: Manager

<u>EXHIBIT A</u>
<u>MOORING FEES AND CHARGES</u>

Mooring Fees and other charges shall be as set forth in Hawaii Administrative Rules, Chapters 15-211 to 15-214, State of Hawaii, as the same may be amended.  Such rates are currently set as follows and, pursuant to the Rules, may be adjusted in accordance with CPI and for improvements made in accordance with Rules:

| | |
|---|---|
| MOORING | $ 670.00 |
| UTILITIES (WATER) | $ 14.00 |
| PERFORMANCE FEE | $ 1340.00 |
| TICKET BOOTH, IF ANY | $ n/a |
| OTHER | $ n/a |
| | |
| TOTAL | $ 684.00 |

**3**

# EXHIBIT "3"

🖨 ✕

| Subject: | Re: RE: Status of "PAINKILLER" seizure |
|---|---|
| From: | lynnpanagakos@yahoo.com |
| To: | Darren.Ching@usdoj.gov |
| Cc: | thomas@otakelaw.com |
| Date: | Thursday, August 17, 2017, 2:48:34 PM HAST |

Thank you Darren.  Lynn

On Thursday, August 17, 2017, 2:37:43 PM HAST, Ching, Darren (USAHI) <Darren.Ching@usdoj.gov> wrote:

Lynn,

The search is ongoing.  You will receive the return upon completion.

Thanks,

Darren

**From:** Lynn Panagakos [mailto:lynnpanagakos@yahoo.com]
**Sent:** Thursday, August 17, 2017 11:18 AM
**To:** Ching, Darren (USAHI) <DChing@usa.doj.gov>
**Cc:** Tommy OTAKE <thomas@otakelaw.com>
**Subject:** Status of "PAINKILLER" seizure

Hi Darren,

On August 10, 2017, FBI Supervisory Special Agent Daniel Olson provided me, in my capacity as attorney for Michael Miske, a copy of the Search and Seizure Warrant, Mag. No. 17-00909-RLP, which authorized the search of the "Boston Whaler 370 Outrage called 'PAINKILLER,'" for certain evidence described in the warrant, and the seizure of the this boat "as necessary to permit a forensic search and inspection." Agent Olson informed me that he anticipated that the search would be completed in approximately one week.

The boat has not yet been returned, nor have I received a receipt for any property taken pursuant to Fed.R.Crim.P. 41(f)(1)(C).  Please advise re: status.

Thank you.

Lynn

Lynn E. Panagakos

Attorney at Law

Davies Pacific Center

841 Bishop Street, Suite 2201

Honolulu, Hawaii  96813

Office: 808-521-3336

Cell: 808-542-99943

Fax: 808-566-0347

**4**

# EXHIBIT "4"

🖶 ✕

**Subject:** Re: RE: RE: "PAINKILLER" Seizure

**From:** lynnpanagakos@yahoo.com
**To:** Darren.Ching@usdoj.gov
**Cc:** thomas@otakelaw.com
**Date:** Tuesday, August 29, 2017, 8:54:33 AM HAST

Thank you Darren.

Lynn


On Tuesday, August 29, 2017, 8:36:43 AM HAST, Ching, Darren (USAHI) <Darren.Ching@usdoj.gov> wrote:


Lynn,

It is under seal.

I will motion the Court to get permission to provide you a copy of the order.

Thanks,

Darren


**From:** Lynn Panagakos [mailto:lynnpanagakos@yahoo.com]
**Sent:** Monday, August 28, 2017 8:10 AM
**To:** Ching, Darren (USAHI) <DChing@usa.doj.gov>
**Cc:** Tommy OTAKE <thomas@otakelaw.com>
**Subject:** Re: RE: "PAINKILLER" Seizure


Darren,


Can I please have a copy of the Court's approval to hold the boat until Nov. 25?

Thank you.


Lynn



On Monday, August 28, 2017, 7:55:53 AM HAST, Ching, Darren (USAHI) <Darren.Ching@usdoj.gov> wrote:


Lynn,

I have been informed by the FBI that:

    The receipt for the items seized from the Painkiller is being generated by FBI and should be provided to you this week.

    The FBI has taken samples from the Painkiller and are awaiting results. FBI swabbed areas of the boat, in lieu of cutting and removing major sections of the boat that would destroy the structural integrity of the boat and ultimately render the boat impracticable for future use. This less drastic, destructive, and intrusive approach (swabbing v. cutting and removing) minimizes any potentially unnecessary harm to the integrity and value of the boat. Depending on the results, other areas may need to be further searched and/or large areas removed to collect additional evidence and run additional tests. The results are expected to take anywhere from 3 – 6 months. The FBI has received Court approval to hold the boat until at least November 25, 2017. This deadline may be extended with Court approval.

The application and affidavit are sealed.

Thanks,
Darren

**From:** Lynn Panagakos [mailto:lynnpanagakos@yahoo.com]
**Sent:** Thursday, August 24, 2017 7:39 AM
**To:** Ching, Darren (USAHI) <DChing@usa.doj.gov>
**Cc:** Tommy OTAKE <thomas@otakelaw.com>
**Subject:** "PAINKILLER" Seizure

Darren,

I am writing to inquire about the status of the search of the Boston Whaler 370 Outrage called "PAINKILLER." Please provide me a receipt for all items seized to date.

In addition, please explain: (1) why it was, and continues to be, necessary to seize the vessel; (2) the basis for FBI Supervisory Special Agent Daniel Olson's estimate that the execution of the search would be completed within one week; (3) the reason for the delay; and (4) the government's current estimated return date. Please also provide me a copy of the application for the search and seizure warrant and the affidavit in support thereof.  This information is requested for the purpose of seeking appropriate relief for any Fourth Amendment violations, including violations arising from defects in the issuance and execution of the warrant.

Finally, I respectfully request that the vessel be returned to its mooring forthwith on the ground that the government's continued seizure of the vessel is unreasonable and in violation of the Fourth Amendment.

Thank you for your consideration.

Lynn

Lynn E. Panagakos
Attorney at Law
Davies Pacific Center
841 Bishop Street, Suite 2201
Honolulu, HI 96813
Office: 808-521-3336
Cell: 808-542-9943
Fax: 808-566-0347

**5**

# EXHIBIT "5"

GPO U.S. GOVERNMENT PRINTING OFFICE: 2015-391-063

FD-597 (Rev. 4-13-2015)

Page ___1___ of ___1___

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
## Receipt for Property

Case ID: _____

On (date)  __9/1/2017__

item (s) listed below were:
☒ Collected/Seized
☐ Received From
☐ Returned To
☐ Released To

(Name) __BOSTON  WHALER  370  OUTRAGE  "PAINKILLER"__

(Street Address) __HA  9849  H , HIN  BWCE1942 D414__

(City) _____

Description of Item (s): __SEE  ATTACHED  PARTIAL  INVENTORY__
__LIST  PENDING  A  CONTINUED  FURTHER  SEARCH__
__AS  DEEMED  NECESSARY.__

*No Further Entries*

Received By: ___N/A___
(Signature)

Received From: _____
(Signature)

_____ SA CRAIG KINGO

# Inventory – Magistrate Number 17-00909 RLP[1]

Hair strand

Hair from cabin

Vacuum filter - Cabin

Vacuum filter - Cabin

Vacuum filter - Cabin

Vacuum filter - Cabin

Knife

Vacuum filter - Center console

Vacuum filter - Forward

Vacuum filter - Aft

Hair

Hair

Round plastic with brown substance

Black ziptie

Vacuum filter - Aft

Swab - Brown substance

Swab - drain

Swab - drains

Hair

Drain cover

Black mat

Yellow-colored brush

White-colored brush

T-shaped piece of metal with black rubber

Hair on towel

Pink packing slip with ebay logo

Hair

Sponge

Sponge

Sponge

Vacuum and hose

Hair

Sponge

Knife in bowl

Leatherman knife

Spray nozzle

---

[1] This inventory is current to date but may include additional items for reasons explained to the Court in the Government's Application to Extend Time in which to Search the Boston Whaler 370 Outrage "Painkiller," HA 9849 H, Hull Identification Number (HIN) BWCE1942D414, dated August 24, 2017.

Hair on bucket

Life vest

Jacket and ear buds

White shirt

Two envelopes with boat registration

Stern engine filter starboard

Stern engine filter center

Toilet paper holder

Soda can

Swab of storage area

Hose and nozzle

Swab-Aft livewell drain

Swab-port fishbox pump discharge

Swab-top port deck drain

Swab-starboard aft deck hose handle

Swab-starboard aft deck hose

Swab-port deck hose handle

Labels, Hygenic liner

Vacuum filter-Fly Bridge

Stern engine filter port

Vacuum filter-console compartment

Black cardboard material

Swab-Sleeping area back panel

Swab-Sleeping area back panel

Swab-Shower floor

Top SD Card

Bottom SD Card

128GB SanDisk

Blue generator cover

Swab -Aft compartment cabinet

Swab near generator

Shower curtain

Shoe print on white material

Shower floor board

Aft deck gasket

Swab - AFT deck gasket

Raymarine E165 #0640009

Vesselview 7 #105487904

Vesselview 7(Repeater) #105487544

Raymarine model #E70162

16GB SanDisk micro SD card

Port stern engine cover

Two stern engine covers

Tool case

Bucket, material & yellow plastic item

Faucet (cold & hot)

Hose segment

West marine handle in plastic bag

Swabs-forward compartment

Black gasket on top cover

Top latch on upper cover

Aft livewell (cooler) drain and swab

Port fishbox pump discharge & swab

Port Bilge pump discharge & swab

Port deck drain (outboard)-stern

Port deck drain (inboard)-stern

Transom drain

Starboard deck drain (inboard)-stern

Starboard deck drain (outboard)-stern

Starboard fishbox pump discharge & pump

Starboard sink discharge

High water bilge pump with discharge hose

Water heater & a/c discharge swab

Shower sump, forward fishbox pumpout & vanity swab

Forward bilge discharge swab

Top cushion cloth & frame above seating area

Black mat

Rope

2 swabs of fishbox interior-port

Siphon

Hair from compartment

Residue filtered from compartment

Black mat

2 swabs of fishbox interior-starboard

Swab-railing

Swab-internal black casing

Cylindrical soft object with yellow rope

Siphon

Residue filtered from compartment

3 swabs of residue from aft mechanical compartment

Possible fingerprint on green can

3

# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF BOSTON WHALER 370 OUTRAGE "PAINKILLER," HA 9849 H, HULL IDENTIFICATION NUMBER (HIN) BWCE 1942D414 MOORED IN KEWALO BASIN HARBOR, HONOLULU, HAWAII | Mag. No. 17-00909 RLP **CERTIFICATE OF SERVICE** |

## CERTIFICATE OF SERVICE

I, Alan Y. Okamoto, hereby certify that a true and correct copy of the

foregoing document has been served by hand delivery on the following:

Darren Ching
Assistant United States Attorney

PJKK Federal Building, Room 6-100
300 Ala Moana Blvd.
Honolulu, HI 96850

Attorney for United States

DATED:  October 13, 2017, at Honolulu, Hawaii.

ALAN Y. OKAMOTO